UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH WAYNE SEKERKE,<br><br>Petitioner,<br><br>v.<br><br>WILLIAM GORE, Sheriff,<br><br>Respondent. | Case No.: 20-CV-1998 JLS (MSB)<br><br>**ORDER (1) DENYING RESPONDENT'S MOTION TO DISMISS; (2) DENYING PETITIONER'S MOTION FOR IMMEDIATE RELEASE; AND (3) TO SHOW CAUSE WHY THE CASE SHOULD NOT BE DISMISSED AS MOOT**<br><br>(ECF Nos. 5, 8) |

Petitioner Kevin Wayne Sekerke ("Petitioner" or "Sekerke"), a state prisoner proceeding pro se, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his confinement at San Diego County Jail while awaiting sentencing on several felony convictions in San Diego Superior Court Case Nos. SCS304221 and SCS305297. ECF No. 1 ("Pet.") at 1. Sekerke alleges the dangers presented by the COVID-19 pandemic, combined with his pre-existing medical conditions, render his continued detention in the San Diego County Jail unconstitutional under the Eighth and Fourteenth Amendments. *Id.* at 6–8. Sekerke has also filed an "Emergency Motion to be

Released" ("Pet.'s Mot.," ECF No. 5).  Respondent has filed a Motion to Dismiss the Petition ("Resp't Mot.," ECF No. 8).  The Court has reviewed the Petition, the Emergency Motion, the Motion to Dismiss, the Response in Opposition to the Motion to Dismiss (ECF No. 9), the relevant documents filed in this case, and the legal arguments presented by both Parties.  For the reasons discussed below, the Court **DENIES** Respondent's Motion to Dismiss and **DENIES** Petitioner's "Emergency Motion to be Released."  Furthermore, the Court **ORDERS** the Parties to **SHOW CAUSE** why the case is not now moot.

## BACKGROUND

At the time Sekerke filed his federal Petition, October 9, 2020, he was confined at San Diego Central Jail, awaiting sentencing on convictions for robbery, burglary, vehicle theft, and attempted extortion.[1]  *See* Pet. at 2.  The facts underlying Sekerke's convictions are not relevant to his Petition because, rather than challenging the constitutionality of his criminal convictions, Sekerke seeks release from custody due to alleged unsafe conditions in San Diego County Jail caused by the COVID-19 pandemic.  *Id.* at 6–8.

Prior to filing his federal Petition, Sekerke raised his claims in the California courts.  On May 19, 2020, Sekerke filed a petition for writ of habeas corpus in the California Court of Appeal, seeking release from custody.[2]  *See* Pet. at 79–84.  Sekerke argued his rights

---

[1] The Court takes judicial notice of the San Diego County Jail website inmate locator, which indicates that on May 21, 2020, Sekerke was sentenced to state prison on several felony convictions in San Diego Superior Court Case No. SCS304221.  *United States v. Basher*, 629 F.3d 1161, 1165 (9th Cir. 2011) (taking judicial notice of Bureau of Prisons' inmate locator available to the public); *see also Foley v. Martz*, No. 3:18-cv-02001-CAB-AGS, 2018 WL 5111998, at *1 (S.D. Cal. Oct. 19, 2018) (taking judicial notice of CDCR's inmate locator); *Graham v. Los Angeles Cnty.*, No. 2:18-cv-01126-PA (GJS), 2018 WL 6137155, at *2 (C.D. Cal. May 4, 2018) (taking judicial notice pursuant to Federal Rule of Evidence 201 of information regarding the status of inmate via the Los Angeles County Sheriff's Department's website and its inmate locator function).

[2] Attached to his federal Petition, Sekerke also includes a copy of a petition for writ of habeas corpus prepared for the San Diego Superior Court, raising the same issues contained in his federal petition and signed on April 14, 2020. Pet. at 56–69.  The petition does not have a case number, and Petitioner did not include a copy of the Superior Court's Order.  Nor was a copy lodged by Respondent.  In his federal Petition, however, Sekerke states his habeas petition to the San Diego Superior Court in case No. HCS23655 was denied in May 2020. Pet. at 3.  The Court takes judicial notice of California Court of Appeal, 4th District, Division One docket, which indicates Sekerke filed a habeas petition in Superior

under the Eighth and Fourteenth Amendments were being violated by his continued confinement during the COVID-19 pandemic. *Id.* at 81. He asserted, among other things, that he suffered from pre-existing medical conditions, including asthma and a past history of tuberculosis, which made his detention in the San Diego County Jail uniquely dangerous for him during the COVID-19 pandemic. *Id.* He argued that his continued confinement was unconstitutional because "when the COVID-19 infection reaches Petitioner in County Jail, it [will] kill [him]." *Id.*

On May 26, 2020, the California Court of Appeal denied Sekerke's habeas petition. *Id.* at 77–78. First, the court noted that under California law, "[a]s a general rule, a litigant will not be afforded judicial relief unless he has exhausted available administrative remedies [Citation] [¶] The requirement that administrative remedies be exhausted 'applies to grievances lodged by prisoner.'" *Id.* (citing *In re Dexter*, 25 Cal. 3d 921, 925 (Cal. 1979)). The Court then concluded that Sekerke had "failed to exhaust his administrative remedies before going to court" and therefore was not entitled to relief. *Id.*

The court went on conclude that Sekerke's claims also failed on the merits. It found that Sekerke had failed to allege sufficient facts to support his claim that the jail was so unsafe for him that he must be released. The court stated, in part, "Sekerke asserts his 'life is in danger due to the COVID-19 pandemic,' but does not identify any medical care or safety precautions his jailors have failed or refused to provide to eliminate or reduce the danger." *Id.* at 78. The court found that Sekerke's "[c]onclusory allegations made without any explanation of the basis for the allegations [did] not warrant relief, let alone an evidentiary hearing." *Id.* (quoting *People v. Duvall*, 9 Cal. 4th 464, 474 (Cal. 1995)).

On August 4, 2020, Sekerke filed a petition for writ of habeas corpus in the California Supreme Court. *See id.* at 89. On September 23, 2020, the California Supreme Court denied the petition, stating: "The petition for writ of habeas corpus is denied.

---

Court Case No. HCS23655. *See* https://appellatecases.courtinfo.ca.gov/search/case/mainCaseScreen.cfm?dist=41&doc_id=2318809&doc_no=D077496&request_token=NiIwLSEmTkw4W1BFSCM9XE1IIFg6UkxbJCMuVzNSUCAgCg%3D%3D (last visited July 20, 2021).

Individual claims relating to conditions of confinement due to COVID-19 are denied, as applicable." *Id.* at 88 (citing *In re Dexter*, 25 Cal. 3d at 925–26).

On October 9, 2020, Sekerke filed the instant federal petition for writ of habeas corpus in this Court. *Id.* at 1. Petitioner subsequently filed an "Emergency Motion to be Released." ECF No. 5. On February 18, 2021, Respondent filed a Motion to Dismiss the Petition. ECF No. 8. Sekerke filed a Response in Opposition to Respondent's Motion on March 4, 2021. ECF No. 9.

## MOTION TO DISMISS

Since the onset of the COVID-19 pandemic more than a year ago, federal courts have been faced with novel issues related to prisoners seeking release from custody due to alleged unsafe conditions in prisons, jails, and other detention facilities. The threshold question is often: What is the proper vehicle for a detainee or prisoner who alleges that COVID-19 has made their detention so unsafe that their continued confinement violates their Eighth Amendment rights and the Petitioner seeks release from custody? And that is the question in this case.

Respondent argues the Petition should be dismissed because Sekerke is merely challenging the conditions of his confinement and as such, he must pursue his claims under 42 U.S.C. § 1983. Resp't Mot. at 4. For his part, Sekerke contends that a petition for writ of habeas corpus is proper because he is seeking release from confinement, which he contends presents a risk to his safety so serious that the Eighth and Fourteenth Amendments require his release. Pet. at 6–8.

### I. Legal Standard

In general, federal law provides "two main avenues to relief on claims related to imprisonment: a petition for a writ of habeas corpus [under] 28 U.S.C. § 2254, and a complaint [for violation of federal civil rights under] 42 U.S.C. § 1983." *Muhammad v. Close*, 540 U.S. 749, 750 (2004). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." *Id.*

A district court has the authority to grant a writ of habeas corpus where an individual is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. Indeed, federal habeas corpus proceedings are the "exclusive remedy" for a prisoner seeking release from custody. *Skinner v. Switzer*, 562 U.S. 521, 533–34 (2011) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)); *see Calderon v. Ashmus*, 523 U.S. 740, 747 (1998); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (holding prisoner cannot seek a determination that she is entitled to immediate or speedier release from confinement under 42 U.S.C. § 1983); *Heck v. Humphrey*, 512 U.S. 477, 481 (1994) ("[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release."). On the other hand, when a prisoner's claim would not "necessarily spell speedier release," suit may be brought under § 1983. *Skinner*, 562 U.S. at 525 (quoting *Wilkinson*, 544 U.S. at 82).

The Supreme Court discussed the interplay between a § 2254 habeas corpus action and a § 1983 civil rights action in *Preiser*. In that case, prisoners brought suit under § 1983, challenging the constitutionality of the disciplinary proceedings that lead to the deprivation of good-time credits. *Preiser*, 411 U.S. at 476–77. The Court considered "whether the specific federal habeas corpus statute, explicitly and historically designed to provide the means for a state prisoner to attack the validity of his confinement, must be understood to be the exclusive remedy available in a situation like this where it so clearly applies." *Id.* at 489. The court concluded that a state prisoner cannot use a § 1983 action to challenge "the fact or duration of his confinement," *id.* at 489, because such an action lies at "the core of habeas corpus." *Id.* at 487. The Court explained that a claim falls within the "core of habeas corpus" when a prisoner challenges "the fact or duration of his confinement" and "seeks either immediate release from that confinement or the shortening of its duration." *Preiser*, 411 U.S. at 489.

Since *Preiser*, the Supreme Court has applied its holding in several different cases. First, in *Wolff v. McDonnell*, the plaintiffs' claims for restoration of good-time credits were

deemed "core" habeas proceedings. 418 U.S. 539, 554 (1974). However, challenges to the validity of the *procedures* for assessing loss of good-time were not core habeas proceedings because success on that claim would not necessarily result in restoration of credits. *See id*. at 554–55. In *Edwards*, the plaintiff's claim alleging due process violations for procedures used in a disciplinary hearing that resulted in deprivation of good-time credits was not properly brought under § 1983 because success on the claim would result in restoration of credits (and thus affect the duration of confinement), making them "core" habeas claims. *Edwards*, 520 U.S. at 647–48.

Next, the Supreme Court concluded claims challenging the procedures used to determine parole eligibility/suitability did not fall within "the core of habeas corpus" because "neither prisoner's claim would necessarily spell speedier release." *Wilkinson*, 544 U.S. at 81. Rather, at most the prisoners could expect only speedier consideration of a new application or a new parole hearing. *See id*. The Court summarized its prior consideration of the interplay between §§ 1983 and 2254:

> Throughout the legal journey from *Preiser* to *Balisok*, the Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement—either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody. Thus, *Preiser* found an implied exception to § 1983's coverage where the claim seeks— not where it simply "relates to"—"core" habeas corpus relief, i.e., where a state prisoner requests present or future release.

*Id.* at 81–82.

Finally, in *Skinner*, the Supreme Court held that a plaintiff seeking post-conviction DNA testing was not required to pursue his claim in an application for habeas relief because the results "would not necessarily imply the invalidity of his conviction." *Skinner*, 562 U.S. at 534 (internal quotation marks omitted). Although the DNA results "might prove exculpatory," the results could also "prove inconclusive or they might further incriminate."

*Id.* (citation omitted). As such, such claims are not deemed to fall within the "core of habeas proceeding" and consequently "must be brought, if at all, under § 1983." *Id.*

In *Nettles*, the Ninth Circuit carefully reviewed *Preiser* and its progeny when considering a habeas petition brought by a state prisoner serving an indeterminate life sentence who sought to have a disciplinary violation expunged after being denied parole. *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (en banc). The Ninth Circuit concluded that "[s]uccess on the merits of Nettles's claim would not necessarily lead to immediate or speedier release because the expungement of the challenged disciplinary violation would not necessarily lead to a grant of parole," as it was only one of a multitude of factors considered by the parole board in denying Nettles's parole. *Id.* at 934–35. The *Nettles* court held that state prisoners whose claims will "not necessarily spell speedier release" may not bring their claims under habeas corpus but must instead bring them pursuant to 42 U.S.C. § 1983. *See id.* at 930–31. The mere possibility that an inmate may get an earlier parole review hearing or may have a more favorable outcome from the parole hearing does not meet the *Nettles* "necessarily" requirement. *See id.* at 934–35. Put another way, if "success on [Petitioner]'s claims would not necessarily lead to his immediate or earlier release from confinement, [Petitioner]'s claim does not fall within 'the core of habeas corpus,' and he must instead bring his claim under § 1983." *Nettles*, 830 F.3d at 935 (quoting *Skinner*, 562 U.S. at 535 n.13).

In sum, the common thread among cases from the Supreme Court since *Preiser* is that when a state prisoner raises "challenges to the validity" of his confinement, *see Muhammad*, 540 U.S. at 750, and success would lead to immediate or speedier release from custody, those claims fall within the "core of habeas proceedings." *Nettles*, 830 F.3d at 934; *see also Wilkinson*, 544 U.S. at 81–82.

**II.  Claims Seeking Release Due to COVID-19 Pandemic**

The Court now turns to how these principles apply in the context of a habeas petitioner seeking release based on claims related to COVID-19. As noted above, the COVID-19 pandemic has been an unprecedented event which has, in turn, presented a

number of novel legal questions.  In this case, the threshold question turns on whether government-mandated protection from the deadly disease means that detention or imprisonment, which was lawful when it was imposed, can lawfully be served in settings that expose prisoners and detainees to risks alleged to be so great that continued confinement amounts to a violation of the Eighth Amendment.[3]  This Court has found no Ninth Circuit case addressing the issue of whether a petition for habeas corpus is the appropriate vehicle for a person who is in state or local custody and asserts that conditions in jail or prison are so unsafe due to COVID-19 that, in order to comply with the Eighth Amendment, the petitioner must be released from custody.  *See William v. Jenkins*, No. CV 21-1456-DMG (GJS), 2021 WL 765567, at *8 (C.D. Cal. Feb. 24, 2021) ("The question of whether prisoner actions asserting violations of their constitutional rights based on the COVID-19 pandemic properly may sound in habeas, versus civil rights, is an open one, with the case law in flux.").

Respondent does not address recent cases considering the impact of COVID-19 pandemic on claims filed by prisoners and detainees.  Respondent simply argues Sekerke's claims "are not within the scope of habeas corpus, as his allegations do not '[challenge] the validity of any confinement' nor do they challenge 'particulars affecting [the] duration [of confinement].'"  Resp't Mot. at 4 (alterations in original).  Respondent is correct that

---

[3] While Sekerke frames his claims as violations of both the Eighth and Fourteenth Amendments, the constitutional analysis of such claims varies depending on a petitioner's status as a pretrial detainee or a convicted prisoner.  The Eighth Amendment applies to prisoners who have been convicted and sentenced; a pretrial detainee is entitled to be free of cruel and unusual punishment under the due process clause of the Fourteenth Amendment.  *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979).  The Ninth Circuit has held that a convicted but not yet sentenced inmate should be treated as a sentenced inmate.  *Resnick v. Hayes*, 213 F.3d 443, 447–48 (9th Cir. 2000) (citing *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994)) (holding that a claim by a convicted prisoner awaiting sentencing is governed by the Eighth Amendment); *Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir. 1990) (holding that, when determining whether the Eighth or Fourteenth Amendment governs an inmate's claim, "[t]he critical juncture is conviction, either after trial or . . . by plea, at which point the state acquires the power to punish and the Eighth Amendment is implicated")).  Therefore, because Sekerke was convicted but not yet sentenced at the time he filed his Petition, his claims fall under the Eighth Amendment, not the Fourteenth Amendment.

"prisoners may not challenge *mere* conditions of confinement in habeas corpus." *Nettles*, 830 F.3d at 933 (9th Cir. 2016) (emphasis added). But the question of whether Petitioner is challenging the conditions of his confinement, or its fact or duration, is not so simple. Indeed, Sekerke is doing both here. He alleges that (1) due to COVID-19, the conditions inside the jail are so unsafe that they violate the Eighth Amendment *and* (2) there is no way to make the jail sufficiently safe for Petitioner, given his specific pre-existing medical conditions and the difficulties presented in the San Diego County Jail setting, that would be consistent with the Eighth Amendment and therefore his only remedy is release from custody. Pet. at 6–8.

Although the Ninth Circuit has not addressed this issue, other circuits have considered the validity of habeas claims filed pursuant to the general habeas statute, 28 U.S.C. § 2241,[4] in the context of the COVID-19 pandemic. In the Sixth Circuit, several federal inmates filed a § 2241 habeas petition "to obtain release from custody to limit their exposure to the COVID-19 virus." *Wilson v. Williams*, 961 F.3d 829, 832–33 (6th Cir. 2020). The inmates claimed that release from prison was the only remedy that could cure the constitutional violations. *Id*. at 837–38. The Sixth Circuit held that a petition for habeas corpus filed by the federal prisoners under 28 U.S.C. § 2241 was the proper vehicle when the prisoners sought "release from custody to limit their exposure to the COVID-19 virus." *Id.* at 832–33. The court rested its decision on the inmates' allegation that "no set of conditions" could possibly be constitutional in light of the dangers of COVID-19 and therefore "the [alleged] constitutional violations occurring at [the prison] as a result of the pandemic [could] be remedied only by release." *Id*. at 838. The court concluded that

---

[4] Section 2241 more broadly extends to any prisoner "in custody in violation of the Constitution . . . of the United States." 28 U.S.C. § 2241(c)(3). It is often used by immigration and other federal detainees and prisoners. Under § 2241, habeas corpus relief is also "available for challenges by a state prisoner who is not in custody pursuant to a state court judgment—for example, a defendant in pre-trial detention or awaiting extradition." *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004). "In these situations, not covered by the limitations in § 2254, the general grant of habeas authority provided by the Constitution and § 2241 will provide jurisdiction for state prisoners' habeas claims." *Id*. (citations omitted); *see also Stow v. Murashige*, 389 F.3d 880, 886 (9th Cir. 2004).

"where a petitioner claims that no set of conditions would be constitutionally sufficient[,] the claim should be construed as challenging the fact or extent, rather than the conditions, of the confinement." *Id*.

In the Tenth Circuit, a panel addressed whether a state prisoner's claim that the Eighth Amendment required his release during COVID-19 pandemic was cognizable under § 2241. The court noted the tension and overlap between habeas corpus and § 1983 as it relates to COVID-19 in particular, stating:

> For the most part [the petition] appears to object only to conditions of confinement, not the legality of custody, and therefore was properly dismissed. But the claim could be construed as also contending that in light of the [COVID-19] pandemic he should be released from custody because there are no conditions of confinement that could adequately prevent an Eighth Amendment violation. At least one circuit court has held that such a claim can be raised through federal habeas proceedings.

*Medina v. Williams*, 823 F. App'x 674, 676 (10th Cir. 2020) (citing *Standifer v. Ledezma*, 653 F.3d 1276, 1280 (6th Cir. 2011); *Wilson*, 961 F.3d 829, 837–38). Ultimately, the Tenth Circuit declined to rule on the issue because, even assuming habeas jurisdiction was appropriate, the petitioner had failed to exhaust state judicial remedies and therefore the petition had to be dismissed. *Id.* at 677 (citing *Magar v. Parker*, 490 F.3d 816, 818 (10th Cir. 2007) (requiring exhaustion for § 2241 claims); *Parkhurst v. Pacheco*, 809 Fed. App'x 556 (10th Cir. 2020) (affirming dismissal of a state prisoner's 28 U.S.C. § 2241 habeas petition, in which he alleged his continued confinement was hazardous to his health in light of the COVID-19 pandemic, for failure to exhaust)).

In another unpublished decision, the Fifth Circuit agreed with the analysis in *Wilson*. There, a federal inmate sought a change in his physical confinement by requesting that he be released to home confinement due to the risk of contracting COVID-19 while in federal custody. *See Cheek v. Warden of Fed. Med. Ctr.*, 835 F. App'x 737, 739 (5th Cir. 2020). The court noted that under Fifth Circuit law, "release from physical confinement in prison

constitutes release from custody for habeas purposes, even though the state retains a level of control over the releasee." *See id.* (quoting *Coleman v. Dretke*, 409 F.3d 665, 669 (5th Cir. 2005)). The court concluded that the petitioner was "challenging the fact and duration of his confinement," and therefore a petition for writ of habeas corpus was the proper vehicle. *Id.* ("Cheek's request for release to home confinement in the context of a global pandemic was properly brought as an application for a writ of habeas corpus under 28 U.S.C. § 2241 because a favorable ruling from the district court would accelerate his release.").

District courts within the Ninth Circuit have come to different conclusions when faced with this issue.[5] In *Bent v. Barr*, the district court noted that "even for state prisoners, the Ninth Circuit has held that 'habeas jurisdiction is proper where a challenge to prison conditions would, if successful, necessarily accelerate the prisoner's release.'" *Bent v. Barr*, No. 19-CV-06123-DMR, 2020 WL 3640009, at *2 (N.D. Cal. July 6, 2020) (citing *Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003)). The court found that the petitioner was "not solely challeng[ing] the conditions of his confinement but also the legality of his continued detention during the COVID-19 pandemic." *Id.* at *4. The court concluded that

---

[5] District courts in other circuits are similarly divided. Some district courts have concluded that such claims are cognizable on habeas. *See Cameron v. Bouchard*, 462 F. Supp. 3d 746, 753–54 (E.D. Mich. May 21, 2020), *vacated on other grounds*, 815 Fed. Appx. 978, 2020 WL 3867393 (6th Cir. July 9, 2020); *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 434 (D. Conn. May 12, 2020) ("Because Petitioners contend that the Eighth Amendment violation inheres in their incarceration at Danbury FCI and cannot be remedied unless they are removed from that setting, Petitioners are challenging the fact—or 'existence'—of their confinement."); *see also Parmeley v. Trump*, 2020 WL 1987366, at *2 (S.D. Ill. Apr. 27, 2020) (concluding a § 2241 habeas petition, rather than a *Bivens* or § 1983 action, was the proper vehicle for federal prisoners seeking release from custody due to heightened risk caused by COVID-19); *Malam v. Adducci*, 452 F. Supp. 3d 643 (E.D. Mich. Apr. 5, 2020) (concluding § 2241 was proper for prisoner who alleged that "no matter what steps were taken, due to her underlying serious health conditions, there is no communal holding facility where she could be incarcerated during the Covid-19 pandemic that would be constitutional"). Other district courts have found the claims non-cognizable on federal habeas. *See Wragg v. Ortiz*, 462 F. Supp. 3d 476 (D.N.J. 2020) (finding claims seeking release to non-prison settings are really unconstitutional conditions of confinement cases which are not yet cognizable on habeas review); *Toure v. Hott*, 458 F. Supp. 3d 387, 399 (E.D. Va. 2020) (finding detainees who sought release due to COVID-19 conditions were not challenging the fact or duration of their detention and therefore their claims were not cognizable on habeas).

it is the fact of the confinement itself that is at issue when there are no changes that will effectively remedy the violation other than release. *See id.*; *see also Torres v. Milusnic*, 472 F. Supp. 3d 713, 724–26 (C.D. Cal. 2020) (finding § 2241 jurisdiction existed when the petitioners' claims sought relief from COVID-related conditions at their institution by challenging the "fact and duration of confinement on the basis that no set of conditions of confinement under the present circumstances could be constitutional").

Other district courts in the Ninth Circuit have reached the opposite conclusion and determined such cases are ultimately challenges to the conditions of prisons and therefore outside the scope of habeas. *See, e.g*, *Wilson v. Ponce*, 465 F. Supp. 3d. 1037, 2020 WL 3053375, at *10 (C.D. Cal. June 8, 2020) (finding a habeas petition for an expedited review for enlargement of custody was not cognizable because, among other things, Supreme Court authority suggests "habeas cannot be stretched this far" and release was not the only available remedy); *Nelson v. Shinn*, No. 21-CV-0040-PHX-DJH-JZB, 2021 WL 2018961, at *2 (D. Ariz. May 4, 2021) (finding prisoner's claim that he must be released because "no modification of his conditions of confinement that will ameliorate [the alleged] violations of the constitution and laws" was not cognizable on habeas corpus); *Espinoza v. Stanislaus Cty. Sheriffs Dep't*, No. 1:20-CV-00824-NON-EJL-THC, 2020 WL 4017828, at *1 (E.D. Cal. July 16, 2020) (dismissing habeas petition in which inmate sought release due to COVID-19 conditions because it failed to raise any claims cognizable on federal habeas corpus).

This Court finds the analysis of the Sixth Circuit in *Wilson* and the Northern District of California in *Brent* most persuasive. In the specific context of the deadly COVID-19 pandemic, when a prisoner claims his detention is unconstitutional in light of the dangers presented by COVID-19 combined with the petitioner's particular circumstances and that petitioner further contends there are "no set of conditions" that could possibly make his custody constitutional, a petition for habeas corpus is the proper vehicle for challenging that custody. Here, Sekerke alleges his detention violates the Eighth Amendment of the U.S. Constitution and argues "no set of conditions" can make his custody constitutional.

Unlike the petitioner in *Wilson*, however, because Sekerke has suffered a state conviction, 28 U.S.C. § 2254 (not 28 U.S.C. § 2241) is the appropriate habeas statute. *White*, 370 F.3d at 1009–10 (concluding that § 2254 limits the general grant of habeas relief under § 2241 and "is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction").

Therefore, the Court finds Petitioner's claim is cognizable under 28 U.S.C. § 2254. The Court **DENIES** Respondent's Motion to Dismiss.

## MOTION FOR RELEASE

On December 29, 2020, Petitioner filed an "Emergency Motion to be Released Now." *See generally* Pet.'s Mot. He asks the Court to release him immediately, stating that "I will die if you do not release me." *Id.* at 1. Sekerke states that at the time he filed the motion for release, there was an "outbreak in the jail" but fails to point to any specific law to support his motion. It appears, however, that Petitioner is requesting a temporary restraining order ("TRO") or preliminary injunction ordering his release while his case proceeds. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (stating documents filed pro se are "to be liberally construed").

Whether construed as a motion for TRO or preliminary injunction, the standard for issuing both is the same. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20); *see also Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). The first factor—likely success on the merits—is the most important. *Garcia v.*

1  *Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) ("We begin with the first and most important factor: whether petitioners have established a likelihood of success on the merits.")). While the moving party carries the burden of demonstrating likelihood of success, he or she is "not required to prove his case in full at a preliminary-injunction hearing." *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

In his one-page motion, Sekerke states: "I am asthmatic with numerous medical conditions. There is an outbreak in the jail. I will die if you do not release me." Pet.'s Mot. at 1. Sekerke provides no facts regarding any precautions taken by staff. He gives no information on what procedures and policies are in place at the jail with respect to COVID-19 precautions. For instance, Sekerke does not indicate whether there is social distancing in the jail, or whether inmates have been provided masks and/or other hygiene items to prevent or hinder the spread of the virus. He states that "over 40 inmates" were infected with COVID-19 but provides no specifics regarding where detainees who tested positive are housed; for instance, whether they are isolated from detainees who are not infected or left with uninfected detainees. In sum, there is nothing in the Motion to support release.

Sekerke appears to rely on the facts presented in his Petition as the basis for his request for immediate release. Having found that Sekerke states a cognizable claim, in order to be successful on the merits, he must meet the burden set forth under 28 U.S.C. § 2254(d). Under § 2254(d), a habeas petition will not be granted unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).

A federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v.*

*Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). In order to grant relief under § 2254(d)(2), a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *See Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

It appears Sekerke presented his claims to the California Supreme Court in a petition for writ of habeas corpus.[6] That court denied the petition without discussion. *See* Pet. at 88. Therefore, the Court must look through to the last reasoned state court decision denying his claim. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805–06 (1991). In this case, that is the opinion of the California Court of Appeal. There, the court denied the petition for failure to exhaust administrative remedies and on the merits, stating:

> Sekerke also has not stated a prima facie case for habeas corpus relief. Such relief is available to remedy illegal conditions of confinement, including inadequate provision for a prisoner's medical needs. To be entitled to habeas corpus relief, the prisoner must allege with particularity the facts on which the claim is based and submit declarations and other reasonably available documents supporting the claim. Sekerke alleges his prior tuberculosis and current asthma increase his risk of death if he contracts COVID-19, but he has not substantiated the allegations with a declaration from a competent witness, medical records, or any other documents. He alleges the conditions in the jail are "unsafe," but provides no details and offers no supporting evidence. Sekerke asserts his "life is in danger due to the COVID-19 pandemic," but does not identify any medical care or safety precautions his jailors have failed or refused to provide to

///

---

[6] Respondent has not lodged the records related to Petitioner's state habeas petitions. Petitioner has attached a copy of his petition to the California Court of Appeal to his federal petition. *See* Pet. at 79–84. In it, he raises the same claim presented in his federal petition. Petitioner also included a copy of the first page of his petition for writ of habeas corpus filed with the California Supreme Court. *Id.* at 89. Because the entire petition is not part of the record currently before the Court, it is impossible to determine conclusively that Sekerke has exhausted the same claims. For purposes of this Order, however, the Court presumes Sekerke raised the same claims in his petition to the California Supreme Court as he did in his petition to the California Court of Appeal.

> eliminate or reduce the danger. Such "'[c]onclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing.'"

Pet. at 78 (citations omitted).

Sekerke must show a likelihood of success in establishing that the appellate court's decision was either (1) contrary to or an unreasonable application of clearly established federal law or (2) based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). To establish an Eighth Amendment violation, a plaintiff must show defendants acted "with deliberate indifference to a substantial risk of serious harm to health." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A constitutional violation under these principles has both objective and subjective components. First, a prisoner must be incarcerated under conditions that, objectively, pose "a substantial risk of serious harm." *Id.* at 834. Second, because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," a prison official must possess "a 'sufficiently culpable state of mind,'" which "[i]n prison-conditions cases . . . is one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). And here, Sekerke must show more than just an Eighth Amendment violation. He must show that no remedy other than release could make his custody constitutional. Moreover, this Court is precluded from considering materials outside the factual record before the state high court when it resolved Petitioner's claims. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (holding that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").

While it appears the Court has not received the entirety of the record that was before the state court, what is currently before the Court is insufficient to establish a likelihood of success on the merits. There is little dispute that COVID-19 presents a substantial risk of serious harm to health. On the record before the Court, however, Sekerke has not presented sufficient evidence to establish that Respondent was wanton or reckless with respect to that risk or has otherwise failed to take reasonable steps aimed at preventing or mitigating the

risk that COVID-19 presents to those detained San Diego County Jail. Petitioner fails to provide any specific evidence of what precautionary measures had been put in place (or not put in place) by the San Diego County Jail and why any such measures were inadequate to contain an outbreak or properly provide medical care should an outbreak occur.

Sekerke also fails to provide sufficient evidence to support his claim that he has pre-existing medical conditions that places him at higher risk should he contract COVID-19. He alleges he suffers from asthma and has a history of tuberculosis. He provides some medical records with his Petition, one from 2011 and the rest from 2008. Pet. at 23–50. The records appear to relate to infections Sekerke suffered while in prison. While some include a notation that Sekerke has a "history of asthma," the records are more than 10 years old and offer little to support his claims regarding the *current* risk COVID-19 presents to his health. His conclusory allegations are insufficient to support his Eighth Amendment claim. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (stating conclusory allegations do not warrant habeas relief.).

In sum, Sekerke has not shown a likelihood of success on the merits of his Eighth Amendment claim. *See Garcia*, 786 F.3d at 740; *see also Hope v. Warden York Cnty Prison*, 972 F.3d 310 (3d Cir. 2020) (denying TRO filed by immigration detainees seeking release under 28 U.S.C. § 2241 due to the risks presented by COVID-19 because the petitioner's failed to show likelihood of success on the merits). Petitioner's Motion for Release is therefore **DENIED.**

## ORDER TO SHOW CAUSE

On July 23, 2021, Petitioner submitted a Notice of Change of Address. ECF No. 10. Petitioner indicates he has been transferred from San Diego County Jail and is now in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), housed at Wasco State Prison. *See id.* Generally, a case becomes moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). The basic question in determining mootness is "whether there exists a present controversy as to which effective relief can be

granted." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007) (quoting *Vill. of Gambell v. Babbitt*, 999 F.2d 403, 406 (9th Cir. 1993)).

Because Petitioner's claims relate to the specific conditions at San Diego County Jail and the only remedy Petitioner seeks is release from San Diego County Jail custody, the Court **ORDERS THE PARTIES TO SHOW CAUSE** why the case should not be dismissed as moot. *See Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (concluding prisoner's transfer to another correctional facility rendered moot his claims for injunctive relief relating to the facility where the prisoner was no longer housed); *see also Ndudzi v. Castro*, No. SA-20-CV-0492-JKP, 2020 WL 3317107, at *7 (W.D. Tex. June 18, 2020) (finding an immigration detainee's § 2241 habeas claims related to COVID-19 were rendered moot when his request for release on habeas corpus was premised upon conditions of confinement at a specific facility and the petitioner was later transferred to another facility).

## CONCLUSION

Based on the foregoing, the Court **DENIES** Respondent's Motion to Dismiss (ECF No. 8) and **DENIES** Petitioner's Motion for Emergency Release (ECF No. 5).

Furthermore, the Court issues an **ORDER TO SHOW CAUSE** why the case should not be dismissed as moot after Petitioner's transfer to CDCR custody. The Parties **SHALL FILE** written memoranda of points and authorities supporting their position, **no later than 30 days** after the date this Order is electronically filed.

**IT IS SO ORDERED.**

Dated: August 13, 2021

Hon. Janis L. Sammartino
United States District Judge